UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RANDY JENKINS, individually and on
behalf of all others similarly situated,

    Plaintiff,

vs.

FIFTH THIRD BANK,

    Defendant.

Case No. 1:16-cv-976

Judge Timothy S. Black

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS
AND TO COMPEL ARBITRATION (Doc. 10)**

In this proposed class action, Plaintiff Randy Jenkins ("Plaintiff") alleges that Defendant Fifth Third Bank ("Defendant") willfully and negligently violated 15 U.S.C. § 1681-1692x, The Fair Credit Reporting Act ("the FCRA") by submitting credit report inquiries after Plaintiff's debt to Defendant had been discharged through Chapter 7 bankruptcy proceedings. This case is now before the Court on Defendant's motion to dismiss and to compel arbitration, or, in the alternative, to stay this action pending arbitration (Doc. 10) and the parties' responsive memoranda (Docs. 13, 14). For the reasons set forth below, the Court will enforce the parties' written agreement to arbitrate and therefore dismiss this case.

    **I.    FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

Defendant is a bank that offers consumer lending, among other banking services. (Doc. 1 at ¶ 11). In December, 2008, Plaintiff opened a credit card account with Defendant (the "Account") and subsequently incurred debt owed to Defendant. (Doc. 10

at 2-3). Pursuant to Defendant's automated credit processing system, upon opening the Account, Plaintiff was mailed his credit card ("Credit Card") with a copy of the terms governing the Account ("the Cardmember Agreement"). (Doc. 10-2 at ¶ 6). The Cardmember Agreement provided that Defendant:

> may reevaluate [Plaintiff's] financial condition and investigate any information you provided on your Account application at any time, and in the course of doing so, we may obtain a current credit report and ask you for any additional information about your financial condition by completing a Personal Financial Statement or such other form that we request from time to time. You authorize us and give us permission to obtain any information about you that we believe would be beneficial to facilitate our determination of your eligibility for the Account and the Card, including credit reports from consumer reporting agencies.

(Doc. 10-4 at ¶ 23).

The Cardmember Agreement also contains an arbitration agreement ("Arbitration Agreement"):

> You and we each agree that any Claim (as defined below) will be arbitrated instead of litigated in court under the circumstances and procedures set forth below. The term Claim (a) means any claim, dispute or controversy between you and us arising from or relating to this Agreement, any prior agreement that you may have had with us or the relationships resulting from the Agreement or any prior agreement, including the validity, enforceability or scope of this provision, the Agreement or any prior agreement and (b) includes claims of every kind and nature, including but not limited to initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statute, common law and equity. The term Claim is to be given the broadest possible meaning and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (i) the Account created by the Agreement or any prior agreement or any balances on the Account, (ii) advertisements, promotions or oral or written statements related to the Account or the terms of financing and (iii) your use of the Account. Any Claim will be resolved upon the election of you or us by arbitration pursuant to this provision and the Code of Procedure (Code) of the National Arbitration Forum (NAF) in effect at the time the

> Claim is filed. (If for any reason the NAF is unable or unwilling or ceases to serve as arbitration administrator, another nationally recognized arbitration organization utilizing similar rules and procedures will be substituted by us.) With respect to Claims covered by this provision, a party who has asserted a Claim in a lawsuit in court may elect arbitration with respect to any Claim subsequently asserted in that lawsuit by any other party or parties. IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PREARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE NAF CODE. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

(Doc. 10-4 at ¶ 25). While the Cardmember Agreement was revised several times over the next few years, the Arbitration Agreement remained substantively the same from October 13, 2008 to May 1, 2012. (Doc. 10-1 at 6; Doc. 10-2 at ¶¶ 6-8).

For more than two years, Plaintiff used the Credit Card to make charges to the Account and received monthly statements reflecting his activity. (Doc. 10-1 at 5; Doc. 10-3). On or about August 12, 2011, Plaintiff made his last purchase on the Account. (Doc. 10-1 at 6). On September 16, 2011, Plaintiff became delinquent on the Account. (Doc. 10-1 at 7). On March 30, 2012, Defendant "charged off" Plaintiff's delinquent balance after Plaintiff continually failed to make payments. (Doc. 10-1 at 7).

On November 29, 2012, Plaintiff filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court"). (Doc. 1 at ¶ 16). On March 6, 2013, the Bankruptcy Court granted Plaintiff a discharge, which

included the debt owed to Defendant. (Doc. 1 at ¶¶ 16-21; Doc. 13-3; Doc. 13-5). Plaintiff did not make any charges to the Account after the discharge. (Doc. 1 at ¶ 23).

On or about September 30, 2013, and March 3, 2014, Defendant submitted credit report inquiries to TransUnion, a credit reporting agency. (*Id.* at ¶ 24). Plaintiff alleges these inquiries were unlawful because the bankruptcy discharge "extinguished any relationship between Plaintiff and Defendant." (*Id.* at ¶¶ 22-28). Plaintiff further claims Defendant's credit inquiries fall outside the scope of permissible uses provided for under 15 U.S.C. §1681b. (*Id.* at ¶ 26). On October 21, 2016, Plaintiff filed, on behalf of himself and all others similarly situated, a single-count complaint asserting Defendant's post-discharge credit report inquiries violated the Fair Credit Reporting Act.

Defendant has moved to dismiss (or in the alternative, stay) this action on the grounds that the Arbitration Agreement requires Plaintiff to arbitrate his claim. (Doc. 10). Plaintiff opposes Defendant's motion. (Doc. 13).

## II. STANDARD OF REVIEW

When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Id.* Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural polices to the

4

contrary"). The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989).

Section 3 of the FAA provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 3 thus requires a court in which suit has been brought "'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).[1]

In considering a motion to compel arbitration under the FAA, a court has four tasks: (1) it must determine whether the parties agreed to arbitration; (2) it must determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending

---

[1] *See also Santos v. Am. Broad. Co.*, 866 F.2d 892, 894 (6th Cir. 1989) ("[w]here the parties to a contract that provides for arbitration have an arbitrable dispute, it is crystal clear that Congress has mandated that federal courts defer to contractual arbitration").

5

arbitration. *Stout*, 228 F.3d at 714.

In determining the scope of an arbitration agreement, it is proper "to ask if an action could be maintained without reference to the contract or relationship at issue." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). The Sixth Circuit applies "the cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions." *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960). It is settled authority that doubts regarding the applicability of an arbitration clause should be resolved in favor of arbitration. *Id.* Indeed, "any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007) (quoting *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004)). If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent extreme circumstances. *Allied Steel & Conveyors*, 277 F.2d at 913. Furthermore, a district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights. *Stout*, 228 F.3d at 715.

## III. ANALYSIS

### A. The parties agreed to arbitration.

Defendant argues that Plaintiff's application for and use of the Credit Card constituted acceptance of the terms of the Cardmember Agreement, including the Arbitration Agreement. (Doc. 10 at 8-9). The Court agrees.

In determining whether parties have agreed to arbitrate specific disputes, courts generally consider the applicable state law concerning contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Ohio law applies here. (Doc. 10-4 at ¶ 32). Agreements on credit accounts between banks and customers "are contracts whereby the issuance and use of a credit card creates a legally binding agreement." *Bank One, Columbus, NA v. Palmer*, 579 N.E.2d 284, 285 (Ohio 1989). Accordingly, a credit cardholder's use of the card shows that "he agree[s] to be bound by the Agreement and all its terms." *Heiges v. JP Morgan Chas Bank, N.A.*, 521 F. Supp. 2d 641, 647 (N.D. Ohio 2007).

Here, Defendant submitted affirmative evidence that Plaintiff used the Credit Card after he was sent the Cardmember Agreement and that Plaintiff received multiple revisions of the Cardmember Agreement—all of which contained the Arbitration Agreement—throughout the period in which he was using the Credit Card to make charges to the Account. (Doc. 10-2 at ¶¶ 5-9). Plaintiff does not dispute that he used the Credit Card to make purchases on the Account and admits he listed Defendant as a creditor for the Account in his bankruptcy case. (Doc. 1 at ¶ 21; Doc. 13 at 9, Ex. 2). In

these circumstances, the Court finds that the Plaintiff's use of the Credit Card amounted to consent of the Arbitration Agreement.  *See Heiges*, 521 F. Supp. 2d at 647.

### B. The Court will enforce the Arbitration Agreement.

#### 1. Plaintiff's bankruptcy discharge did not render the Arbitration Agreement unenforceable.

Plaintiff argues the Arbitration Agreement no longer applies because Plaintiff's bankruptcy discharge renders the Cardmember Agreement unenforceable.  (Doc. 13 at 4-9).

The Court does not agree.  Whether a contract's arbitration clause remains enforceable after the debt owed under the contract has been discharged depends on the nature of the claim.  A court may decline to enforce an arbitration agreement <u>only</u> if arbitration would conflict with the underlying purposes of the Bankruptcy Code.  *See Mann v. Equifax Information Services, LLC*, No.12-cv-14097, 2013 U.S. Dist. LEXIS 103210, at *12-13 (E.D. Mich. July 22, 2013), *report and recommendation adopted at* 2013 U.S. Dist. LEXIS 101803 (E.D. Mich. July 22, 2013); *Green Tree Servicing, LLC v. Brough*, 930 N.E.2d 1238, 1243 (Ind. Ct. App. 2010).

Accordingly, courts have found arbitration agreements unenforceable in cases where the debtor alleges the defendant attempted to collect discharged debt, thereby frustrating the "fresh start" provided in bankruptcy.  *See Harrier v. Verizon Wireless Personal Communications LP*, 903 F. Supp. 2d 1281, 1283 (M.D. Fla. 2012) (refusing to compel arbitration when plaintiff-debtors had "received numerous calls from the defendant seeking payment of a discharged debt"); *Jernstad v. Green Tree Servicing,*

8

*LLC*, No. 11 C 7974, 2012 WL 8169889 at *2 (N.D. Ill. Aug. 2, 2012) (finding that one of the Bankruptcy Code's primary purposes is "to give debtors a fresh start," which the creditor frustrated by making several attempts to collect the discharged debt).

However, courts have enforced arbitration agreements, post-discharge, when the debtor's claims are unrelated to the creditor's attempt to collect the discharged debt. In *Mann*, the plaintiff filed an FCRA claim against a creditor after discovering discharged debts on her credit report. *Mann*, 2013 U.S. Dist. LEXIS 103210, at *2-3. Importantly, the creditor had not attempted to collect the discharged debt. *Id.* at *8. The court enforced the arbitration clause, reasoning that the debtor's claim was not a "core" part of her bankruptcy proceedings and referring the claim to arbitration would not impose any financial liability or otherwise interfere with the "fresh start" guaranteed by the Bankruptcy Code. *Id.* at *10-13. The court noted "the mere fact that Mann was granted a discharge of the *debt* owed to NMAC does not mean that the Arbitration Agreement executed in connection with the Contract cannot be enforced with respect to their future disputes which are otherwise covered by that Agreement." *Id.* at *13.

Similarly, in *Brough*, a debtor claimed a creditor violated the FCRA by reporting discharged debt to credit agencies. *Brough*, 930 N.E.2d at 1241. Noting that the debtor's bankruptcy proceeding had concluded, the court found arbitration of the FCRA claim would not jeopardize the bankruptcy case nor interfere with the discharge. *Id.* at 1243. The court held that the discharge did not invalidate the debtor's obligation to arbitrate his FCRA claim. *Id.*

9

Here, Plaintiff does not allege Defendant attempted to collect discharged debt; his sole claim is premised on his allegation that Defendant violated the FCRA by submitting unauthorized credit inquiries. (Doc. 1 at ¶¶ 50-53). This is not a "core" bankruptcy proceeding, and referring this claim to arbitration will not impose any financial liability on the Plaintiff, interfere with his "fresh start" guaranteed by the discharge, nor otherwise conflict with the purposes of the Bankruptcy Code. In these circumstances, the Court will enforce the Arbitration Agreement. *See Mann,* 2013 U.S. Dist. LEXIS 103210, at *12-13; *Brough*, 930 N.E.2d at 1243.

### 2. The Arbitration Agreement is not a Contract of Adhesion.

Next, Plaintiff argues that the Arbitration Agreement is an adhesion contract and ambiguous terms should be construed against Defendant as the drafter. (Doc. 13 at 10). Specifically, Plaintiff contends that by defining an arbitrable "claim" as including disputes arising from, *inter alia,* "prior agreement[s]," Defendant subjected itself to the presumption that claims materializing subsequent to the Cardmember Agreement "were intentionally excluded from the language of the [Arbitration Agreement]." *Id.*

Plaintiff's argument is not well-taken. First, any ambiguities in the Arbitration Agreement "should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714. Second, even if the Court were to construe the Cardmember Agreement against Defendant, there are no ambiguities to interpret. The Arbitration Agreement explicitly applies to "claims of every kind and nature" and states it is to "be given the broadest possible meaning." (Doc. 10-4, ¶ 25). The reference to "prior agreement[s]" is made "by way of example and without limitation." (*Id.*) Third, unequal bargaining power, in and of itself, is not

10

legally or equitably sufficient to hold an arbitration agreement unenforceable. *Stachurski v. DirecTV, Inc.*, 642 F.Supp.2d 758, 768 (N.D. Ohio 2009).[2]

Accordingly, Plaintiff's argument that the Arbitration Agreement is an adhesion contract fails.

### 3. Plaintiff will be able to vindicate his FCRA rights through arbitration.

Next, Plaintiff argues that he will not be able to vindicate his rights under the FCRA through arbitration. (Doc. 13 at 12). A party who has agreed to arbitration "should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). The Supreme Court has repeatedly recognized that federal statutory claims can be appropriately resolved through arbitration and has enforced agreements to arbitrate such claims. *See Green Tree Fin. Corp.—Alabama v. Randolph*, 531 U.S. 79, 89 (2000) (citations omitted). Even claims "arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." *Id.* at 90. With respect to proposed class actions, Rule 23 does not entitle litigants "to class proceedings for the vindication of statutory rights." *American Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309-

---

[2] Instead, "there must be some evidence that, in consequence of the imbalance, the party in the weaker position was defrauded or coerced into agreement to the arbitration clause." *Id.* For instance, "[t]he stronger party's refusal to negotiate a key term is a common feature of adhesion contracts." *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 24 (Ohio 2008). Plaintiff did not submit any evidence indicating that Defendant coerced or defrauded him into agreeing to the Cardmember Agreement nor that Defendant refused to negotiate the Arbitration Agreement.

10 (2013).

The Arbitration Agreement expressly provides "YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OR CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION." (Doc. 13 at 13). Plaintiff argues that by contractually foreclosing the possibility of class litigation, the Cardmember Agreement makes his rights under the FCRA too expensive to vindicate. (Doc. 13 at 14). He states that he "cannot be expected to pay many thousands of dollars in attorney's fees to arbitrate his individual claim." (Doc. 13 at 15). He claims, without support, that the prohibitive expense of bilateral arbitration "effectively prevents" the vindication of Plaintiff's statutory and class member rights.

The Supreme Court has rejected a similarly unsupported assertion. In *Randolph*, the plaintiff argued the court should not enforce an arbitration clause because of the "risk" arbitration would impose prohibitive fees that would render the plaintiff unable to vindicate her statutory rights. 531 U.S. at 90. The arbitration agreement at issue was silent as to the costs and fees of arbitration, and the plaintiff "failed to support" her assertion that costs were prohibitive. *Id.*, n. 6. For example, the plaintiff submitted evidence that certain arbitrators on average charge $700 per day, but did not demonstrate this rate applied to her arbitration. *Id.* The Supreme Court rejected the plaintiff's argument, holding "[t]he 'risk' that [plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91.

Here, Plaintiff submitted even less information on this issue than the plaintiff in *Randolph*. Plaintiff's unsupported statement that arbitration will cost "many thousands of dollars in attorney's fees" is simply too speculative to justify the invalidation of the Arbitration Agreement. *Randolph*, 531 U.S. at 90-91.

Accordingly, the Court will enforce the plain terms of the Arbitration Agreement and refer Plaintiff's claim to arbitration.

### 4. The Arbitration Agreement is not overbroad or contrary to public policy.

Lastly, Plaintiff argues that the Arbitration Agreement is overbroad and contrary to public policy. However, Plaintiff cites to no authority supporting this proposition and offers "no real analysis . . . ." *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Id.* Plaintiff does not identify a public policy that a compelled arbitration would violate. Plaintiff states that Defendant gives itself a "get out of jail free card," but fails to acknowledge that Defendant remains subject to an adverse award rendered in arbitration.

Accordingly, Plaintiff has not shown the Arbitration Agreement to be overbroad nor contrary to public policy.

### C. The Court will dismiss the case and compel arbitration.

When an issue is referable to arbitration, the FAA requires a court to stay proceedings until the arbitration has taken place in accord with an agreement to arbitrate. 9 U.S.C. § 3. However, if all claims are referred to arbitration, the action may be

dismissed. *See, e.g., Arnold v. Arnold Corp.*, 920 F.2d 1269, 1275 (6th Cir.1990) (finding that it was not "error for the district court to dismiss the complaint" after ordering arbitration); *Ozormoor v. T-Mobile USA, Inc.*, 354 Fed.Appx. 972, 975 (6th Cir. 2009) (noting that the Sixth Circuit has "already rejected" the argument that 9 U.S.C. § 3 "requires district courts to stay suits pending arbitration rather than dismiss them"); *Hensel v. Cargill, Inc.*, No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999) (upholding dismissal of "litigation in which all claims are referred to arbitration may be dismissed"). Because Plaintiff's only claim has been referred to arbitration, the Court will dismiss this case without prejudice.

## IV. CONCLUSION

For these reasons, Defendant's motion to compel arbitration (Doc. 10) is **GRANTED**, and this civil action is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Date: __8/22/17__　　　　　　　　　　　　　_Timothy S. Black_
　　　　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　United States District Judge

14